UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEPHEN DEAN BAKER,

                    Petitioner,

            v.

GARY GREENE, SUPERINTENDENT,
Great Meadow Correctional Facility,

                    Respondent.

<u>DECISION & ORDER</u>

03-CV-6368P

---

## <u>INTRODUCTION</u>

*Pro se* Petitioner Dephen Dean Baker ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered April 10, 1998, in New York State, County Court, Monroe County, convicting him, after a jury trial, of one count each of Attempted Murder in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 110.00, 125.25 [1]), Assault in the First Degree (Penal Law § 120.10 [1]), and Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03).

## <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The charges arise out of a shooting incident that occurred in the City of Rochester, New York on August 11, 1996.

On that date, at approximately 2:35 p.m., David Richard Tavares[1] ("Tavares" or "the victim") saw Petitioner, whom he knew from the neighborhood as "Frenchy," standing by a phone booth near the intersection of Evergreen Street and Conkey Avenue. From a distance of about ten feet and without saying a word, Petitioner pulled out a small dark gun and fired it, striking Tavares twice – once in the right pelvic area and once below his Adam's apple – and fled on foot. T.T. 258-66. Tavares staggered from the scene for a brief distance before collapsing in front of a nearby residence. T.T. 267.

Investigator Mark Sennett of the Rochester Police Department ("Investigator Sennett") responded to the scene and, upon asking Tavares, was informed that he had been shot by "Frenchy." Tavares also indicated that "Frenchy" had fled in the direction of Evergreen Street. T.T. 294-95. Investigator Sennett and Officer Michael Marcano ("Officer Marcano") went to Evergreen Street where they found a red Mazda abandoned in the roadway with its doors open almost directly in front of the residence at 32 Evergreen Street. T.T. 296, 335, 337-38, 341. Officer Marcano testified at trial that he had responded to this particular address in the past on several occasions for "drugs, drug calls, people selling drugs . . . shots being fired, nuisance calls, fights." T.T. 341-42. The red Mazda was later identified as belonging to Adriene White ("White") who, at the time of the crime, was romantically linked to Petitioner's brother. White testified at trial that she regularly lent the car to Petitioner and his brother and had lent the car to

---

[1] On direct examination, Tavares testified that he was originally from Kingston, Jamaica and that at the time of the trial, he had been in the United States for four years on a visa. Trial Trans. ("T.T.") 256. On cross-examination, he testified that his visa had expired and that he was illegally in the United States. As a result, there was an outstanding warrant for his arrest. At the trial, Tavares appeared with his attorney who was representing him in the pending immigration matter, as well as on a pending criminal matter in another court. In several instances on cross-examination, he invoked his Fifth Amendment right to remain silent. T.T. 277-78, 282-83, 287.

Petitioner's brother on the Friday or Saturday prior to August 11, 1996. T.T. 312-20. White also

testified on direct examination that she knew Petitioner "was born in Jamaica" and that "[h]e

lived in Canada." T.T. 324.

On January 30, 1997, a Monroe County Grand Jury indicted Petitioner on one

count of Attempted Murder in the Second Degree, two counts of Assault in the First Degree, and

one count of Criminal Possession of a Weapon in the Second Degree. *See* Indictment No.

97-0041 (Resp't Ex. B).

Before the trial began, the trial court issued a *Sandoval*[2] ruling, permitting the

prosecution to cross-examine Petitioner, if he chose to testify at trial, on two prior Canadian

drug-related convictions, as well as immigration-related issues concerning his legal status in

Canada and the United States. T.T. 9-10.

Petitioner pleaded not guilty to the charges, and a jury trial was held before the

Hon. William H. Bristol from March 23 through March 26, 1998. *See* T.T. 1, 4-5. The

prosecution presented testimonial evidence from various witnesses, including the victim, White

and Officer Marcano. Petitioner, who did not testify at trial, primarily defended his case by

attempting to discredit the testimony of the victim, who was the only eyewitness to the shooting.

On April 10, 1998, the jury found Petitioner guilty of all counts of the indictment,

except for Count Three, which charged Petitioner with Assault in the First Degree on an alternate

theory. He was subsequently sentenced to concurrent terms of twelve and one-half to twenty five

years imprisonment for the attempted murder and assault convictions, and to a concurrent term of

---

[2] *People v. Sandoval*, 34 N.Y.2d 371 (1974) (admissibility of prior convictions or proof of prior
commission of specific criminal, vicious or immoral acts to impeach defendant's credibility).

seven and one-half to fifteen years imprisonment for the criminal possession of a weapon conviction. Sentencing Mins. ("S.M.") 9.

      Represented by new counsel, Petitioner appealed his judgment of conviction on the following grounds: (1) evidentiary error; and (2) improper jury identification charge. *See* Appellant's Br., dated 07/00, Points I-II (Resp't Ex. B). The Appellate Division, Fourth Department unanimously affirmed Petitioner's judgment of conviction on February 7, 2001. *People v. Baker*, 280 A.D.2d 964 (4th Dept. 2001). Leave to appeal was denied by the New York Court of Appeals on June 29, 2001. *See* Certificate Denying Leave from New York Court of Appeals (Hon. Howard A. Levine), dated 06/29/2001 (Resp't Ex. H).

      On or about February 4, 2002, Petitioner filed a motion for *vacatur*, pursuant to N.Y. Crim. Proc. L. ("C.P.L.") § 440.10, arguing that he had been deprived of his right to the effective assistance of trial counsel on three grounds. *See* Pet'r C.P.L. § 440.10 motion, dated 02/04/02 (Resp't Ex. I). The county court conducted a hearing, pursuant to C.P.L. § 440.30, to determine facts that were not part of the record with respect to one portion of Petitioner's claim. After the hearing was conducted, the county court denied Petitioner's motion, in part on procedural grounds, and in part on the merits. *See* Decision and Order of the Monroe County Court (Hon. Patricia D. Marks), dated 11/25/02 (hereinafter "440 decision") (Resp't Ex. N). Leave to appeal was denied by the Appellate Division, Fourth Department on May 9, 2003. *See* Decision of the Appellate Division, Fourth Department (Hon. L. Paul Kehoe), dated 05/09/03 (Resp't Ex. R).

      This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) evidentiary error; (2) improper jury identification charge; and (3)

ineffective assistance of trial counsel.  Pet. ¶ 12A-D (Dkt. # 3); Traverse ("Trav."), Points I-IV (Dkt. # 12).

For the reasons set forth below, habeas relief is denied, and the habeas corpus petition is dismissed.

## GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW

### A.  The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision.  *Williams v. Taylor*, 529 U.S. at 412; *accord Sevencan v. Herbert*, 342 F.3d 69, 73-74 (2d Cir. 2003), *cert. denied*, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. *Williams*, 529 U.S. at 413; *see also id*. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." *Id*. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility"), *cert. denied*, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the

applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C.

§ 2254(b)(1)(A); *see*, *e.g.*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999); *accord*, *e.g.*,

*Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994), *cert. denied*, 514 U.S. 1054 (1995). "The

exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the

state courts." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), *cert.*

*denied*, 464 U.S. 1048 (1984).


## C.   The Adequate and Independent State Ground Doctrine

"It is now axiomatic that in 'cases in which a state prisoner has defaulted his

federal claims in state court pursuant to an independent and adequate state procedural rule,

federal habeas review of the claims is barred.'" *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir.

2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "A habeas petitioner may

bypass the independent and adequate state ground bar by demonstrating a constitutional violation

that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime

for which he has been convicted." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Murray*

*v. Carrier*, 477 U.S. 478, 496 (1986)).


## PETITIONER'S CLAIMS

## 1.   Improper Jury Identification Charge

Petitioner asserts that he was denied his right to a fair trial when the trial court, in

delivering its jury identification charge, inadvertently conveyed an opinion that Petitioner was the

perpetrator of the crime. Further, he argues that although the trial court took immediate curative

action, "its remedial measure fell woefully short of fulfilling its purpose."  Pet. ¶ 12B; Trav., Point II.  Petitioner raised this claim on direct appeal, and it was rejected on the merits.[3]

A federal habeas court typically does not review state-law questions determined by state courts, including the propriety of jury instructions.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Accordingly, for an erroneous jury instruction to support a claim for habeas corpus relief, the error must have "so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  The federal court must review the jury charge as a whole and consider the instruction in the context of the whole trial record.  *Estelle v. McGuire*, 502 U.S. at 72; *Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir. 1999).  The reviewing court's task is not to determine "whether the challenged instructions, standing alone, are erroneous or misleading" as a matter of state law, *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997), but rather "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."  *Estelle*, 502 U.S. at 72 (internal quotation omitted).  Where due process has not been violated, "instructions that contain errors of state law may not form the basis for federal habeas relief."  *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993).  Jury instructions in state trials are a matter of state law, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  Thus, the task of this Court is not to determine whether a given instruction

---

[3]  The Appellate Division, Fourth Department, determined that:  "County Court's substitution of the word 'defendant' for the word 'perpetrator' in the charge on identification does not require reversal.  The court immediately corrected the error, which even defendant's trial and appellate counsel characterize as 'inadvertent' and 'unintended', and the identification charge was otherwise unobjectionable."  *People v. Baker*, 280 A.D.2d at 964 (internal citations omitted).

was correct or incorrect under state law, but rather whether, in the context of the trial as a whole, the instruction violated Petitioner's constitutional right to due process.

The heart of Petitioner's claim is that the trial court inadvertently conveyed an opinion that he was guilty in the course of giving its identification charge to the jury. *See* Pet. ¶¶ 12B, 12-13; Trav., Point II. Specifically, he claims this occurred when the trial court judge charged the jury that in evaluating the evidence, the jury must examine with care a number of factors. Among the factors to be considered was, "what the distance between the victim and this defendant – strike that. What was the distance between the victim and the shooter?" T.T. 483-84. Petitioner does not challenge the constitutionality of the identification instructions generally, only the manner in which the court improperly conveyed the particular factor mentioned above. In Petitioner's view, although the trial court judge immediately corrected the mistake, such correction was insufficient to ameliorate the prejudice caused by the misstatement. *See* Pet. ¶¶ 12B, 13.

This Court cannot find that the jury instruction at issue rises to the level of a due process violation. Aside from the trial court judge's inadvertent substitution of the words "this defendant" in place of "the shooter" – a misstatement which was immediately corrected – the identification charge was otherwise proper, and the trial court emphasized the prosecution's burden to prove identity beyond a reasonable doubt. T.T. 482. The court stressed that responsibility for evaluating the identification evidence rested solely with the jury and that the jury should examine the relevant proof with great care. T.T. 483. In addition, as the trial judge approached the end of the charge, he stated, "I remind you that – I don't suggest at all what your verdict should be." T.T. 509. Thus, considering the context of the jury charge as a whole, it is

not reasonably likely that the jury failed to properly execute its deliberative function with regard to the issue of the assailant's identity. *See, e.g.*, *People v. Willis*, 527 N.Y.S. 2d 870, 871 (N.Y. App. Div. 1988) ("While that portion of the court's charge [on identification, in which the court substituted the word 'defendant' for the word 'perpetrator' on five occasions] was erroneous, reversal is not warranted since a review of the identification charge as a whole reveals that it properly conveyed to the jury that the prime issue to be determined was whether the defendant was, in fact, the perpetrator and clearly set forth the correct rules for the jury to apply in arriving at its decision"); *People v. Bennett*, 534 N.Y.S. 2d 422, 423 (N.Y. App. Div. 1988) ("In the context of the entire identification charge, the[] two minor slips of the tongue [in which the judge misspoke and used defendant's name instead of the word 'perpetrator'] cannot be said to have resulted in a usurpation of the jury's prerogative as the sole judge of the defendant's culpability and criminal liability"). *See also People v. West*, 553 N.Y.S. 2d 7, 8 (N.Y. App. Div. 1990) (substitution of the word 'perpetrator' for the word 'defendant' in court's identification charge to jury did not deprive defendant of fair trial).

Accordingly, Petitioner's claim provides no basis for habeas relief, and the claim is denied.

## 2.  Evidentiary Error

Petitioner argues that the trial court erred in permitting the prosecution to present allegedly prejudicial evidence regarding his and the victim's shared Jamaican heritage and the location of the red Mazda at 32 Evergreen Street.  Specifically, he contends that the testimonial evidence linked him to the victim and to a known drug house, thereby creating an unfair

impression that Petitioner and the victim were involved in drug trafficking and that the shooting was related to said drug activity. Pet. ¶ 12A; Trav., Point I. Petitioner raised this claim on direct appeal and it was rejected on the merits.[4]

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see generally Estelle*, 502 U.S. at 67 (finding that habeas corpus relief does not lie for errors of state law). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must "show that the error deprived [him] of a fundamentally fair trial." *Taylor v. Curry*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial'") (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove

_____

[4] The Appellate Division, Fourth Department held as follows: "Contrary to defendant's contention, reversal is not required as the result of any evidentiary error. References to the shared nationality of defendant and the victim were isolated and not part of a pattern of inflammatory references to race or appeals to racial prejudice. Moreover, although a police officer testified that the car apparently abandoned by the shooter was found in front of a 'drug' house, there was no proof linking defendant to that drug house, and thus the fact that the car was found there was no more than happenstance. The challenged evidence did not establish an uncharged crime and did not prejudice defendant." *Baker*, 280 A.D.2d at 964 (internal citations omitted).

11

a reasonable doubt that would have existed on the record without it.'" *Dunnigan v. Keane*, 137

F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)); *see also Collins v.

Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly

significant") (internal quotation omitted).  Moreover, the court "must review the erroneously

admitted evidence 'in light of the entire record before the jury.'" *Dunnigan*, 137 F.3d at 125

(quoting *Johnson v. Ross*, 955 F.2d at 181).  In making this due process determination, the Court

should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling

was erroneous under New York State law, and (2) whether the error amounted to the denial of

the constitutional right to a fundamentally fair trial.  *Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir.

2003); *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001).  As set forth below, the Court has

reviewed the trial court's evidentiary ruling to which Petitioner objects under this two-part test

and concludes that Petitioner's claim lacks merit.

### (A)  <u>The Evidentiary Ruling was not Erroneous under State Law</u>

The introduction of unfairly prejudicial evidence against a defendant in a criminal

trial is contrary to both New York state and federal law.  *See Dunnigan*, 137 F.3d at 125; *see also*

*People v. McKinney*, 24 N.Y.2d 180, 184 (1969); Fed. R. Evid. 403 ("[a]lthough relevant,

evidence may be excluded if its probative value is substantially outweighed by the danger of

unfair prejudice").  However, in this case, there is no basis to conclude that the trial court's

admission of the complained of evidence was violative of state law – let alone federal law –

based on its allegedly prejudicial nature.

With respect to Petitioner's objection to the testimony elicited by the prosecutor

regarding the shared ethnic heritage of Petitioner and the victim, such instances of allegedly

improper testimony were isolated. Further, the elicited testimony, on its own, was innocuous. The record reflects two instances in which the prosecutor directly elicited testimony that separately established that Petitioner was Jamaican and that the victim was Jamaican. T.T. 256, 324. Contrary to Petitioner's assertion, neither instance created a strong inference that Petitioner and the victim were involved in drug trafficking and that the shooting was related to said drug activity. *See* Trav., Point I, 4. In fact, the Court notes that it was primarily the cross-examination of the victim by defense counsel that raised the issue of the victim's possible involvement in narcotics trafficking. T.T. 274-84. Nonetheless, any notion that Petitioner and the victim knew each other from drug trafficking activities was strongly countered by the victim's testimony that he was not a friend or an acquaintance of Petitioner, nor was he an enemy or rival and that he had no dispute with Petitioner, either individually or as part of a group. T.T. 261. Moreover, in both instances, after the information regarding the shared heritage was elicited, the prosecutor did not pursue the issue or elicit testimony connecting the shared ethnic heritage of Petitioner and the victim to any sort of illicit behavior, such as involvement in drug activity.

Similarly, Petitioner's contention that the trial court improperly admitted evidence from Officer Marcano that linked Petitioner to "a residence where drugs were sold and drug turf wars were fought" is equally meritless. The record reflects that, on direct examination, Officer Marcano testified that he had responded to calls at 32 Evergreen Street numerous times in the past for "drugs, drug calls, people selling drugs . . . shots being fired, nuisance calls, fights." T.T. 341-42. He did not testify that Petitioner was associated with or connected to 32 Evergreen Street or any illicit activity that may have taken place there. Thus, contrary to Petitioner's contention, his testimony would not have necessarily caused the jury to infer that "the victim was

13

shot as part of a drug war among competing Jamaican drug dealers." Pet. ¶ 12A, 8. Thus, the Court finds that the trial court's ruling was not erroneous under state law.

### (B) The Alleged Error Did Not Deprive Petitioner of his Right to a to a Fundamentally Fair Trial

Even if the trial court erroneously admitted the complained of evidence, Petitioner cannot show that the admission of the evidence deprived him of his right to a fundamentally fair trial. *See Dunnigan*, 137 F.3d at 125. Petitioner cannot make such a showing because of the strength of the evidence against him. *Id.* at 130.

Here, the case against Petitioner was based almost entirely on the victim's identification of Petitioner as the individual who shot him. The victim's testimony at trial on this issue was unwavering. Any evidence of Petitioner's possible involvement in drug activity – while potentially probative of motive or a common scheme or plan – would have had little bearing on his identification of Petitioner as the individual who shot him. Tavares testified that he had known Petitioner (whom he knew as "Frenchy") for approximately three or four months prior to the shooting; during the course of those three or four months he had seen Petitioner around the neighborhood virtually every day; although they were not friends or acquaintances, they were not enemies or rivals; and, they played soccer together on opposing teams. T.T. 259-63. Furthermore, Tavares provided detailed testimony concerning the circumstances surrounding the shooting (i.e., who shot him, what type of gun he was shot with, who else was present when he was shot). T.T. 264-74. Indeed, when asked by the prosecution if he remembered "making eye contact with [Petitioner] or looking [Petitioner] in the eyes at the point [Petitioner] shot [him]," he answered in the affirmative. T.T. 274.

The evidence in question therefore could not have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d at 19. The unwavering eyewitness testimony of the victim identifying Petitioner as the person who shot him was highly probative of Petitioner's guilt and sufficient to convict him. Any isolated references made by the prosecution to the shared ethnic heritage of the Petitioner and the victim and/or to the location of the red Mazda could not have materially altered the jury's determination. *See id*.

In sum, Petitioner's claim presents no basis for habeas corpus relief. The state court's determination of this issue was not contrary to, or an unreasonable application of, clearly established federal law. Thus, Petitioner's request for a writ of habeas corpus based on the state court's evidentiary ruling is denied.

**3. Ineffective Assistance of Trial Counsel Based on Trial Counsel's Abandonment of Misidentification Defense and Failure to Object to Jury Charge**

Petitioner contends that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel. He bases this claim on the following: (1) trial counsel's abandonment of the defense of misidentification; (2) trial counsel's failure to object to improper comments made by the trial judge during the jury charge; (3) trial counsel's alleged interference with his right to testify in his own defense. Pet. ¶¶ 22C-D; Trav., Point III. Petitioner raised these issues in his motion for *vacatur*, and the first two were rejected on a state procedural

ground.[5]  Consequently, as discussed below, they are procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. at 729.  Here, the county court rejected Petitioner's ineffective assistance of counsel claim based on trial counsel's abandonment of the defense of misidentification and failure to object to the trial court's jury charge pursuant to C.P.L. § 440.10(2)(c)[6].  In doing so, the court determined that both of these issues were matters of record that could have been raised at the time of Petitioner's direct appeal, but unjustifiably were not.  The Second Circuit has recognized C.P.L. § 440.10(2)(c) as an adequate and independent state ground sufficient to preclude federal habeas review of a state-court defendant's claims.  *See, e.g.*, *Sweet v. Bennett*, 353 F.3d 135, 139-40 (2d Cir. 2003); *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997); *Aparicio v. Artuz*, 269 F.3d at 91.  Here, the county court's reliance on C.P.L. § 440.10(2)(c) to deny

_____

[5]  They were also rejected on the merits, as was the third grounds, which is discussed *infra* at Section 4.

[6]  C.P.L. § 440.10 provides, in relevant part, that:

> 2.  Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:
>
>> (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]

C.P.L § 440.10(2)(c).

Petitioner's ineffective assistance of trial counsel claim based on the aforementioned grounds is an adequate and independent state ground, thereby rendering it procedurally defaulted from habeas review by this Court.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." *Coleman*, 501 U.S. at 749-50 (internal citations omitted); *accord, e.g.*, *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000). Petitioner does not allege cause and prejudice necessary to overcome the procedural bar, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice (i.e., that he is actually innocent).

Accordingly, habeas relief is unavailable to Petitioner, and grounds three and four of the habeas corpus petition are denied.

### 4. Ineffective Assistance of Trial Counsel Based on Petitioner's Alleged Deprivation of Right to Testify

Petitioner also argues that he was deprived of his Sixth Amendment right to the effective assistance of counsel because trial counsel denied him the right to testify at trial. In particular, he argues that he wished to testify at trial, but was precluded from doing so by his attorney. Petitioner further argues that his attorney failed to inform him that he, as the defendant,

had the authority to make the ultimate decision whether to testify. *See* Pet., 17-19; Trav., Point IV. Petitioner raised this claim in his motion for *vacatur* and it was rejected on the merits.[7]

   To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *id.*, and may not second-guess defense counsel's strategy. *Id.* at 690.

   Petitioner contends that counsel denied him his right to testify. He argues that he wished to do so, but was prevented from doing so by his attorney. He further argues that he was unaware that he controlled the decision to testify. *See* Pet., 17-19; Trav., Point IV, 12-14. The 440 court denied this claim on the merits, following an evidentiary hearing in which Petitioner

---

  [7] The county court found that "the defendant was made aware that he could testify at trial, and that he consciously chose not to testify. There is no indication in the record or from the facts credited at the hearing which supports the defendant's allegation that his trial counsel denied him the right to testify at trial. The defendant's counsel gave only legal advice with respect to the issue of the defendant taking the stand. The final decision to testify was the defendant's, therefore, his allegations are without merit." 440 Decision, 4.

and his trial attorney, Robert Smith, Esq. ("Smith"), testified. *See* Hearing Mins. ("H.M.") of 10/04/02. In rejecting Petitioner's contention, the county court found that Petitioner had not met his burden of proving by a preponderance of the evidence that his trial counsel had denied him the right to testify at trial. *See* 440 Decision, 4.

At the 440 hearing, Petitioner testified that he never had a conversation with Smith about his right to testify, but that he told Smith on several occasions before and during the trial that he wished to testify. H.M. 6-7, 13. He further testified that during the trial, he was unaware that he had a right to testify and the authority to make the decision whether to do so. *Id.* at 7. Additionally, he testified that he and Smith had a disagreement over whether he should testify and that Smith advised him it was not in his best interest to testify because "the [victim] wasn't credible" and if Petitioner took the stand, "[the] [People] are going to deal with [Petitioner's] prior criminal record." *Id.* at 8. Petitioner testified that he told Smith he still wanted to testify, but Smith told him "he [was] not going to let him." *Id.* at 8, 16-17. On cross-examination, he stated that he "knew he could testify," but that Smith "never explained to [him] what was on [Smith's] mind, what decision was [Petitioner's]." *Id.* at 14.

Smith testified that he and Petitioner had discussions before trial concerning whether Petitioner should testify. Smith testified that he never told Petitioner that he would not let Petitioner testify and in fact advised him that it was Petitioner's decision whether to testify. H.M. 20-22. He further testified that the final decision as to whether Petitioner would testify was made by Petitioner at the close of the People's case. *Id.* at 21. The county court credited Smith's testimony and found that Petitioner was made aware that he could testify at trial and consciously chose not to do so. *See* 440 Decision, 4.

It is well-settled that the ultimate decision regarding whether to testify belongs to the defendant, and his attorney's professional duty is to advise him of the "benefits and pitfalls" of that decision. *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997). Moreover, "counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Brown v. Artuz*, 124 F.3d at 79. It is true, however, that an attorney may "strongly advise the course that counsel thinks best." *Id*. Where, as here, defense counsel testified that he advised Petitioner about both the right to testify and the wisdom of doing so, and the state court credits that testimony over the contrary testimony of the defendant, the reviewing court must give deference to the lower court's assessments of credibility. *See U.S. v. Campbell*, 300 F.3d 202, 215 (2d Cir. 2002).

Here, the 440 court credited the testimony of Smith over that of Petitioner. *See* 440 Decision, 4. That court's credibility finding is entitled to a presumption of correctness under § 2254(e)(1). *See Shabazz v. Artuz*, 336 F.3d 154, 161 (2d Cir. 2003). Petitioner has failed to provide evidence to rebut this presumption. Accordingly, the record does not support a determination that Smith's performance was objectively unreasonable under the first prong of *Strickland*.

In any event, even if Petitioner had not been advised that it was his decision whether to testify, or trial counsel had prevented him in some way from doing so, Petitioner has offered no evidence demonstrating that his failure to testify prejudiced his defense. *See Brown*, 124 F.3d at 79-81 (defendant claiming ineffective assistance due to counsel's failure to advise about personal right to testify must still establish prejudice under second prong of *Strickland*). Petitioner merely argues in conclusory fashion that his testimony would have "countered" the

testimony of the victim; however, he does not explain how he would have refuted the testimony of the victim, which was both compelling and unwavering. Furthermore, had Petitioner taken the stand, he would have been exposed to potentially harmful cross-examination regarding his prior convictions and immigration issues as a result of the trial court's *Sandoval* ruling. Thus, Petitioner cannot show there is a reasonable probability that the outcome of his trial would have been different had he testified.

Accordingly, the state court's determination of this claim did not contravene or unreasonably apply settled Supreme Court law. The claim is denied.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. *See*, *e.g.*, *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 111-113 (2d Cir. 2000). This Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States

Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the

Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       September  2 , 2010